# ORIGINAL

FILED
U.S. DISTRICT COURT
DIV.

2009 JUL 31 AM 8:57

CLERK _L. Johnson_
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

RAMONA MCDANIEL,                  )
                                  )
            Plaintiff,            )
                                  )
      v.                          )      CV 308-076
                                  )
MICHAEL J. ASTRUE, Commissioner   )
of Social Security Administration,)
                                  )
            Defendant.            )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Ramona McDaniel ("Plaintiff") appeals the decision of the Commissioner of Social

Security ("Commissioner") denying her application for supplemental security income ("SSI")

benefits under the Social Security Act.  Upon consideration of the briefs submitted by

counsel, the record evidence, and the relevant statutory and case law, the Court **REPORTS**

and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil

action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

### I. BACKGROUND

Based upon claims of disability dating back to March 31, 2004, Plaintiff applied for

SSI benefits based on a protective filing date of April 1, 2004.[1,2] Tr. ("R"), pp. 20, 87-88.

The Social Security Administration denied her initial claim (R. 59-61) and her request for

reconsideration. R. 46. Plaintiff then requested a hearing before an Administrative Law

Judge ("ALJ"). After two hearings at which Plaintiff testified and was represented by

counsel, the ALJ issued an unfavorable decision dated December 18, 2007. R. 20-27.

Applying the five step sequential process required by 20 CFR § 416.920, the ALJ

found:

1.    The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2.    The claimant has the following severe impairments: degenerative disc/joint disease of the cervical and lumbar spine, status-post fusions of them, and depression/dysthymia (20 CFR § 416.920(c)).

3.    The medically determinable impairment or combination of impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P of Regulations No. 4.

4.    The claimant's degenerative joint/disc disease of the neck and lower back limit her to a residual functional capacity of performing light exertional work activities that never require climbing ladders, ropes,

--------

[1]Plaintiff argues in her brief that she became disabled on January 1, 1996, and implies that the ALJ improperly focused on whether Plaintiff was disabled from the date of her SSI application in 2004. (Pl.'s Br., p. 3). However, the record reflects that prior to Plaintiff's hearing with the ALJ on March 28, 2008, she amended her disability onset date to March 31, 2004. R. 185.

[2]The Court notes that Plaintiff had previously filed an application for SSI benefits that alleged a disability onset date of January 1, 1996. R. 101-04, 214. The Social Security Administration denied her application initially, and on reconsideration. R. 68-71, 73-75. Plaintiff requested a hearing before an Administrative Law Judge; however, she later withdrew that request. R. 45, 76-77.

or scaffolding.[3] She can individually sit, stand, walk, push and/or pull for at least six of eight hours each eight-hour workday. She can lift/carry 20 pounds occasionally (2 ½ hours per eight-hour workday) and 10 pounds frequently (up to 5 ½ hours per eight-hour workday). She has no postural or environmental limitations. Her depression limits her to performing work activities with a specific vocational preparation of 1-3. Her concentration may drift from 0-2 ½ hours during an eight-hour workday if the work is repetitive, routine, or boring; however, she can pay enough attention to details to meet the general productivity requirements of the job(s) within the same workday. The claimant is able to perform her past relevant work of a route driver which is exertionally light, semi-skilled work as performed by claimant, and knitting machine operator which is light, semi-skilled work.

R. 22-27.

Because the ALJ determined that Plaintiff could perform her past relevant work, the sequential evaluation process stopped, and the ALJ concluded that Plaintiff "was not under a 'disability' as defined in the Social Security Act, since April 1, 2004 (20 CFR § 416.920(f)), the date the application was filed. R. 27. When the Appeals Council ("AC") denied Plaintiff's request for review, the Commissioner's decision was "final" for the purpose of judicial review under 42 U.S.C. § 405(g). Having exhausted her administrative remedies, Plaintiff filed this civil action in the United States District Court for the Southern

---

[3]Light work involves:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 416.697(b).

District of Georgia requesting a reversal of that adverse decision. Plaintiff now argues that the ALJ erred by failing to properly evaluate the medical evidence regarding Plaintiff's spinal problems, and erred by failing to properly evaluate Plaintiff's mental impairments and resulting functional limitations.

## II. THE STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual

4

findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

As noted above, Plaintiff argues that the ALJ erred by failing to properly evaluate the medical evidence regarding Plaintiff's spinal problems, and erred by failing to properly evaluate Plaintiff's mental impairments and resulting functional limitations. Although Plaintiff's arguments raised in her brief hinge on the ALJ's determination of her credibility, she does not specifically address this issue. However, because Plaintiff's arguments hinge on the ALJ's determination of Plaintiff's credibility, the Court must first address the ALJ's findings concerning her credibility.

### A. The ALJ's Determination of Plaintiff's Credibility

The ALJ found that Plaintiff has severe degenerative disc/joint disease of the cervical

and lumbar spine, status-post fusions of them.  R. 22.  Thus, the ALJ concluded that the objective evidence substantiates Plaintiff's severe musculoskeletal impairment.  However, the ALJ also concluded that the objective evidence did not substantiate the degree of limitation alleged by Plaintiff.  In reaching this conclusion, the ALJ explained:

> [Plaintiff] alleges that she has constant pain in her neck and lower back.  Her neck pain goes from her neck down her left side with left arm numbness.  However, lumbar and cervical spine MRI(s) conducted on March 2, 2004, showed L5-S-1 disc protrusion with only slight effect upon the thecal sac as well as mild disc protrusion at L4-5 (Exhibit B-2F/37B).  Also shown was moderate disc protrusion at C6-7 with mild to moderate effect upon the cord as well as a smaller disc protrusion at C5-6 (Exhibit B-2F/37A).  In December 2004 x-rays of her right shoulder were normal and cervical spine x-rays showed no acute process (Exhibit B-7F).  There were no complaints of left arm pain or numbness.  When seen for a physical therapy session in January 2007 claimant reported a pain level of 8/10, yet she showed up wearing high heel boots that would ordinarily cause crippling pain to an individual with true low back pain.  She reported that she was unable to go back home to get her tennis shoes to wear to treatment because she had been out that morning doing a lot of errands and just ran out of time (Exhibit B-7F).  These objective medical findings and observations do not substantiate claimant's allegations of inability to sit, stand, walk or lie down over 15 minutes at a time and constantly having to change positions all day.

> [Plaintiff's] credibility is further diminished by the following:  (1) she lied to Dr. Huthwaite about not using any illegal drugs.  She has used marijuana in the past per her mother's statement to Dr. Long and claimant's self admitted testimony at Judge Davenport's hearing; (2) [Plaintiff] alleges illiteracy and special education classes, but school records and her previous statements show scores in the 80's for typing, a 90 in science back in 1982/83 [Exhibit B-4E/2]; (3) [Plaintiff] alleges illiteracy but worked for a few months as her ex-husband's receptionist, which required taking notes, writing down appointments, and handling either paper records or computerized records; (4) she claims she does not handle a check book but her mother said she does regularly; (5) she alleged she could not sit longer than 10 minutes but sat for over 30 minutes at Judge Davenport's first hearing; [and] (6) she told Judge Davenport she did no lifting on her knitting machine job but told Dr. Huthwaite she had to carry 80 pounds.

6

R. 26.

The Eleventh Circuit has established a three-pronged test for evaluating a claimant's complaints of pain and other subjective symptoms. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (*per curiam*). Under the Eleventh Circuit's pain standard, Plaintiff must show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged pain or the restriction arising therefrom, or (3) that the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed pain or restriction. Id. When discrediting a claimant's subjective allegations of disabling pain, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (*per curiam*).

"Credibility determinations are, of course, for the [Commissioner], not the courts." Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985). Moreover, this Court is required to uphold the Commissioner's credibility determination if it is supported by substantial evidence. Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980) (*per curiam*). As the Eleventh Circuit recently explained:

> Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [his] medical condition as a whole.

Dyer v. Barnhart, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (internal quotation marks and citations omitted).

Here, the ALJ's written decision clearly reflects the <u>Holt</u> analysis was appropriately followed when reaching the conclusion that Plaintiff's subjective complaints of pain were not credible to the degree alleged and that Plaintiff's objectively determined medical condition was not of such severity that it would reasonably give rise to the degree of limitations alleged. R. 22-26. The ALJ addressed each prong of the <u>Holt</u> analysis as described above, and the substantial evidence in the record supports his findings.

First, the ALJ acknowledged that there was evidence of an underlying medical condition constituting a severe impairment: degenerative disc/joint disease of the cervical and lumbar spine, status-post fusion." R. 22. Having addressed the first prong of <u>Holt</u>, the ALJ went on to evaluate Plaintiff's allegations of the severity of her pain stemming from that impairment. The ALJ reviewed the medical evidence of record, and found that Plaintiff's medically determinable impairments could reasonably be expected to produce a few of the alleged symptoms, but Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. R. 26.

In making this determination, the ALJ considered, in detail, written documents submitted by Plaintiff (R. 113-77),[4] as well as her testimony concerning her allegedly disabling pain. R. 25, 633-54, 668-75. The ALJ noted that in the written documents, Plaintiff alleged that she was unable to work due to limitations resulting from her impairments and that she had constant pain and could not hold out to work. R. 25. At her March 2007 hearing, Plaintiff testified:

---

[4]The documents consist of disability reports, a work history report, and function reports that were filled out by Plaintiff between March, 31, 2004 and April 19, 2005. R. 113-121, 122-30, 131-39, 140-47, 148-55, 156-59, 160-67, 168-77.

> Her worst problems are her neck and back pain. Her neck pain goes from her neck down her left side with left arm numbness and they are constant. Her low back pain is also constant. If she sits, stands, walks or lies down too long, over 15 minutes at a time, the pain is worse. She constantly has to change positions all day. She rated her neck and arm pain as a 7 on a pain scale of 1-10 and rated her back pain as a 9. She takes pain medication which is of limited benefit. The pain never goes away, it just eases off some. After taking medications, her back pain would be an 8. She also testified that she has bad migraine headaches, and has nausea and vomiting 4-5 times a day. This started 3-4 months ago. In a 24 hour period she spends most of her time in bed or on the couch about 12-15 hours per day. Finally, she testified that she could not read or write.

R. 25, 644-47, 651. Additionally, the ALJ noted that Plaintiff's mother testified that on Plaintiff's bad days which occurred 2-3 times a week, Plaintiff could not dress herself, and therefore, her daughters had to help her. R. 25, 652, 655. Plaintiff's mother further testified that after Plaintiff's 2004 surgery, she had been going down hill. R. 25, 656.

In discrediting Plaintiff's complaints concerning her pain limitations, the ALJ noted that the medical evidence did not substantiate the degree of limitation alleged by Plaintiff and her mother. R. 26. Plaintiff complained that she had constant pain in her neck and lower back and that her neck pain goes from her neck down her left side with left arm numbness. R. 26. However, the ALJ concluded that the medical imaging revealed only slight problems during the periods in which Plaintiff alleged the incapacitating symptoms. R. 26. Specifically, the ALJ found that Plaintiff's lumbar and cervical spine MRI conducted on March 2, 2004, showed L5-S-1 disc protrusion with only slight effect upon the thecal sac as well as mild disc protrusion at L4-5. R. 26, 402. Additionally, the ALJ found that there was moderate disc protrusion at C6-7 with mild to moderate effect upon the cord as well as a smaller disc protrusion at C5-6. R. 26, 404. Furthermore, the ALJ noted that in December

2004, x-rays of Plaintiff's right shoulder were normal and cervical spine x-rays showed no acute process (Exhibit B-7F). R. 26. The ALJ also noted that there were no complaints of left arm pain or numbness. R. 25.

Next, the ALJ observed that despite Plaintiff's claims of disabling pain (Plaintiff reported a pain level of 8/10), when seen for a physical therapy session in January 2007, she showed up wearing high heel boots that would ordinarily cause crippling pain to an individual with true low back pain. R. 25. Additionally, the ALJ noted that Plaintiff reported that she was unable to go back home to get her tennis shoes to wear to treatment because she had been out that morning doing a lot of errands and just ran out of time. R. 25. Lastly, the ALJ specifically enumerated six discrepancies, noted *supra,* concerning Plaintiff's credibility with regards to her consultation with Dr. Huthwaite. R. 26.

Therefore, in satisfying the requirements of Holt, the ALJ also sufficiently explained his reasons for discounting Plaintiff's credibility. Here, the ALJ's credibility determination was based on the record as a whole, and he properly articulated the basis for his determination in his written decision. The ALJ reviewed Plaintiff's medical records and properly considered Plaintiff's own testimony regarding her level of pain under the Holt standard. He also considered Plaintiff's description of her activities and lifestyle and noted incongruities between Plaintiff's testimony and the objectively supported medical opinions in the record. Taken in total, it is apparent that the ALJ rejected Plaintiff's subjective complaints concerning her alleged limitations after thoroughly evaluating the evidence in the record. See Watson v. Heckler, 738 F.2d 1169, 1173 (11th Cir. 1984) (*per curiam*) (concluding that the ALJ's consideration of objective medical findings, the claimant's pain

10

killers, failure to timely seek treatment, daily activities, inconsistent statements, and demeanor were sufficient to discredit disabling nature of the claimant's pain). Clearly articulated credibility findings such as these, which are supported by substantial evidence, will not be disturbed by a reviewing court. Foote, 67 F.3d at 1562. Given the absence of credible support for the severity of her claims and the ALJ's clearly articulated reasons for discrediting the claims, Plaintiff's subjective complaints concerning her limitations were properly discredited. Next, the Court turns to the errors Plaintiff did raise.

## B.    The ALJ Properly Evaluated the Medical Evidence

As to the first argument addressed by Plaintiff, she argues that the ALJ failed to properly evaluate the medical evidence in Plaintiff's claim. Plaintiff's over-arching argument is that the ALJ failed to consider whether Plaintiff was disabled for a closed period.[5] In support of this error, Plaintiff argues that because she under went two surgeries between March 2, 2004 and February 17, 2006, she was disabled for, at least, a closed period. Additionally, Plaintiff asserts that because the ALJ reached conflicting conclusions from the same studies/records, he did not consider pertinent medical information. Finally, Plaintiff argues that the ALJ improperly relied upon the opinion of a non-examining state agency physician.

The ALJ's finding that Plaintiff was not disabled because she could perform her past

---

[5]In a "closed period" case, the decision maker determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of his decision. Pickett v. Bowen, 833 F.2d 288, 289 n.1 (11th Cir. 1987). Typically, both the disability decision and the cessation decision are rendered in the same document. Id.

relevant work is supported by substantial evidence. Concerning Plaintiff's degenerative disc/joint disease of the cervical and lumbar spine, the ALJ found:

> The medical evidence shows that claimant has a significant medical treatment history for degenerative disc/joint disease of the lumbar spine L4-5 and L5-S1 (Exhibit B-2F/37B) with L5-S1 herniated nucleus pulposus (HNP), status-post microdiscectomy (Exhibit B-2F/39) degenerative disc/joint disease of the cervical spine C5-6 and C6-7 (Exhibit B-2F/37A), status post fusion (Exhibit B-2F/43), and depression/dysthymia (Exhibits B-1F/39, B-3F/5 and B-8F/7). The objective evidence substantiates the claimant's musculoskeletal impairment. Lumbar and cervical spine MRIs conducted on March 2, 2004, show L5-S1 disc protrusion and bilateral facet hypertrophy with slight effect upon the thecal sac as well as mild disc protrusion with moderate hypertrophy at L4-5(Exhibit B-2F/37B). Also shown was moderate disc protrusion and osteophytic spurring at C6-7 with mild to moderate effect upon the cord as well as a smaller disc protrusion at C5-6 (Exhibit B-2F/37A).

R. 22.

### 1.    Alleged Disability Due to Two Surgeries

The Court turns first to Plaintiff's argument that the ALJ should have considered whether Plaintiff was disabled for a closed period of twelve months or longer, due to her spinal problems. (Pl.'s Br., pp. 10-13). Plaintiff maintains that the ALJ should have considered whether she was disabled between March 2, 2004, the date Plaintiff's MRI reflected cervical and lumbar problems, through February 17, 2006, a date after Plaintiff's second spinal surgery. (Id. at 14). Plaintiff states that "even a cursory review of the evidence clearly shows two spinal surgeries in a span of less that 12 months, accompanied by two abnormal MRI's from March 2004 to July 2005" establishes Plaintiff's disability within that closed period of time. (Id. at 15).

SSI may be awarded for any period in which an individual is unable to engage in

substantial gainful activity for a continuous period of at least twelve months. 20 CFR §§ 416.905(a), 416.909. An individual who files an application for SSI must prove that she is disabled. 20 CFR § 416.912. Here, the crux of Plaintiff's argument is that because she required two surgeries, she was disabled. Plaintiff states that the "ALJ's focus when assessing [her] complaints of pain and limitation associated with spinal problems clearly show that he never considered a closed period of disability." (Id. at 13). Additionally, Plaintiff argues that the ALJ's decision clearly does not contain any meaningful discussion concerning whether Plaintiff was disabled either before and/or shortly after her spinal surgeries. (Id. at 13-14).

Initially, the Court notes that Plaintiff's argument that her surgeries indicate that she was disabled is misguided. As noted by Defendant, the mere fact that Plaintiff had two surgeries does not establish that she was disabled or had any functional limitations. See Osborn v. Barnhart, 194 Fed. App'x 654, 661 (11th Cir. 2006). "[T]he claimant bears the burden of proving that he is disabled, and, consequently, [s]he is responsible for producing evidence in support of [her] claim." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(a)). Plaintiff can carry this burden by showing that she has an impairment or combination of impairments that limit her physical and/or mental ability to perform basic work activities. 20 CFR § 404.920(c). "The 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986); see also Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (persuasively noting that a diagnosis of a

condition says nothing about the condition's severity). As such, Plaintiff cannot solely rely on her two surgeries as a means by which to establish that she is disabled. Furthermore, as discussed herein, a review of the evidence shows that Plaintiff was not disabled for any time during the entire relevant period.

### 2. Evaluation of the Medical Evidence

Plaintiff asserts that the ALJ noted that the "objective medical evidence substantiates [Plaintiff's] musculoskeletal impairment." (Pl.'s Br., p. 12). Plaintiff argues that despite those findings by the ALJ, he improperly – using the same 2004 reports that led the doctors to perform two surgeries – discounted Plaintiff's complaints of pain limitation associated with the spinal problems. (Id. at 13). Plaintiff argues that although the ALJ stated that Plaintiff's spinal complaints were confirmed and that she had undergone "significant" medical treatment for the condition, the ALJ, from the same evidence, determined that Plaintiff's complaints of pain and limitation were not credible. Plaintiff's argument on this point fails.

Plaintiff argues that the ALJ's focus when assessing her complaints of pain and limitations associated with the spinal problems clearly show that he never considered a closed period of disability. Plaintiff states that apart from the diagnostic testing cited above, the ALJ only points to a single physical therapy session from January 2007 and Plaintiff's complaints of pain and limitations from March 2007. (Id.).

As previously noted in Part III A, the ALJ concluded that the objective evidence substantiates Plaintiff's severe musculoskeletal impairment. However, the ALJ also concluded that the objective evidence did not substantiate the degree of limitation alleged

14

by Plaintiff. Therefore, the ALJ did properly evaluate Plaintiff's impairments using the 2004 reports that led the doctors to perform two surgeries, but he discredited her allegations concerning her complaints of limitations.

Concerning her complaints of limitations, Plaintiff argues that the ALJ only pointed to a single physical therapy session from January 2007 and Plaintiff's complaints of pain and limitations from March 2007. However, the Court notes that in making his determination concerning Plaintiff's spinal conditions, the ALJ considered Exhibits B-2F/37B, B-2F/39, B-2F/37A, B-2F/43, B-1F/39, B-1F/39, B-3F/5, and B-8F/7. R. 22. Therefore, the ALJ reviewed medical records from March 2, 2003 through February 28, 2006. R. 313, 401, 402, 404, 409, 424-27. Specifically concerning her credibility, the ALJ stated he considered Plaintiff's testimony as well as her mother's and Exhibit B-1E.[6] R. 25. A review of Exhibit B-1E shows that the ALJ reviewed Plaintiff's disability appeal report dated April 19, 2005, Plaintiff's functional reports dated February 9, 2005 and August 10, 2004, Plaintiff's disability reports dated March 31, 2004, July 20, 2004, and September 30, 2004, and Plaintiff's work history report dated July 20, 2004. R. 113-21. Although Plaintiff argues that the ALJ only pointed to a single physical therapy session from January of 2007 and Plaintiff's complaints of pain and limitations from March of 2007 in determining her subjective pain, (Pl.'s Br., p. 13), the record clearly establishes otherwise. Therefore, the ALJ evaluated the medical evidence and simply determined that Plaintiff's complaints concerning her limitations were not credible.

3. **Reliance on the Opinion of a Non-Examining State Agency Physician**

---

[6]Plaintiff's credibility was thoroughly discussed in Part III A.

15

The Court turns next to Plaintiff's argument that the ALJ did not base his opinion on substantial evidence because he gave greater weight to the state agency consultant, Dr. Gorge Lee Cross, and used his opinion, which Plaintiff maintains is incomplete, to improperly discredit the opinion of Dr. Sandra Gibbs, Plaintiff's primary care provider. (Pl.'s Br., pp. 14-15). Plaintiff points out that Dr. Cross rendered his opinion in 2004, and therefore, his opinion could not have taken into consideration the records concerning Plaintiff's second shoulder surgery, i.e., medical records from May 31, 2005, July 14, 2005 and August 29, 2005.

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986) (*per curiam*). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986). The Commissioner, however, is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991).

Here, Plaintiff argues that the state agency doctor, Dr. Cross, who rendered his

16

opinion on January 4, 2005, could not have considered any medical records from May 31, 2005, July 14, 2005, August 29, 2005, nor the post-surgical limitations described by Plaintiff's surgeon. (Id.). Therefore, Plaintiff argues that it was improper to use Dr. Cross's opinion to discredit the opinion of Dr. Gibbs. Specifically, Plaintiff states, "For the ALJ to have given "greater weight" to an opinion that pre-dated clinical evidence of significant cervical and lumbar abnormalities, both of which required surgical intervention, does not logically justify the decision's rationale that the state agency opinion should be used as a basis for the decision because Dr. [] Gibbs (the family physician) did not provide a function-by-function assessment of what made [Plaintiff] disabled." (Pl.'s Br., p. 15).

Dr. Cross's January 4, 2005 opinion stated that Plaintiff could occasionally lift 20 pounds, and frequently lift 10 pounds. R. 444. He also determined that Plaintiff could stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour work day. R. 444. Dr. Cross further determined that Plaintiff could sit (with normal breaks) for a total of 6 hours in an 8-hour workday. He also determined that Plaintiff had no limitations for pushing and/or pulling (including operation of hand and/or foot controls). R. 444.

On the other hand, Dr. Gibbs simply submitted a letter stating Plaintiff "is currently disabled and is not able to work. Any assistance that you can provide would be greatly appreciated. Thanks in advance for you help. Please call or write if there is any additional information needed." R. 274.

In assigning the weight provided to the physicians' opinion, the ALJ considered the opinion of Dr. Gibbs, but discounted her opinion because she did not provide a function -by-function assessment per 20 CFR § 416.913 as to what she thinks makes claimant "disabled."

17

R. 26. The ALJ afforded greater weight to the opinion of Dr. Cross who determined that Plaintiff can perform a range of light exertional work activities.[7] R. 26. Thus, the ALJ concluded that Dr. Cross's opinion concerning Plaintiff's functional capacity is substantiated by the medical findings. R. 26.

The Court finds that the ALJ properly discounted the conclusory, uncorroborated assessments of Dr. Gibbs. Moreover, the other medical evidence of record supported the ALJ's decision to discount Dr. Gibbs' opinions and her findings of limitations on Plaintiff's abilities for work. The ALJ properly relied on the opinion of Dr. Cross.

To the extent that Plaintiff argues that Dr. Cross did not take into consideration the medical records/evidence concerning Plaintiff's second surgery, Plaintiff's argument is unavailing. The crux of Plaintiff's argument is that the ALJ failed to consider whether Plaintiff was disabled for a closed period of time between March 2, 2004, the date Plaintiff's MRI reflected cervical and lumbar problems, through February 17, 2006. However, Dr. Cross's opinion corroborates the ALJ's determination that Plaintiff was capable of light work. Furthermore, Dr. Cross's opinion was rendered on January 4, 2005, a time within the purported closed period Plaintiff claims she was disabled. Thus, there was no error in the ALJ's interpretation of the medical opinions of record.

---

[7]It is noteworthy that according to Social Security Ruling 96-6p, findings of fact made by State agency medical and psychological consultants regarding the nature and severity of an individual's impairments must be treated as expert opinion evidence of a nonexamining source at the ALJ and AC levels of administrative review. Although ALJs are not bound by the findings of state agency doctors, "they may not ignore these opinions and must explain the weight given to the opinions in their decisions." SSR 96-6p. This responsibility to address the opinions of state agency doctors is also codified at 20 C.F.R. § 416.927(f)(2)(i).

In sum, Plaintiff must establish that she is disabled. 20 CFR § 416.912. Plaintiff's argument that because she had two surgeries, she is disabled is insufficient to carry her burden. Additionally, the ALJ properly discredited Plaintiff's complaints concerning her limitations; as a result, he determined Plaintiff was capable of performing light work. In the process of determining her RFC, the ALJ considered the entire record and properly assigned weight and credited and/or disregarded the pertinent portions of the record, including the medical opinions. Thus, based on the above analysis, the ALJ's finding, that Plaintiff was not disabled for any time during that entire period, was supported by substantial evidence. When the ALJ's opinion is supported by substantial evidence and he or she determines that a claimant is not disabled for any time during that entire period, the ALJ does not err in failing to consider a claimant's eligibility for a closed period of disability. Jones v. Commissioner of Soc. Sec., 181 Fed. App'x 767, 773 (11th Cir. 2006). Therefore, as the ALJ determined that Plaintiff was not disabled at any time, the ALJ did not err in failing to consider Plaintiff's eligibility for a closed period of disability.

**C.     The ALJ Properly Evaluated Plaintiff's Mental Impairments and Functional Limitations**

Finally, Plaintiff argues that her mental impairments and functional limitations were more debilitating than the ALJ acknowledged. According to Plaintiff, the ALJ erred in affording greater weight to the opinion of Dr. Marvin Long, and discounting the opinion of Dr. Justin Huthwaite. (Pl.'s Br., pp. 16-19). Plaintiff argues that because he did not rely on Dr. Huthwaite's opinion, the ALJ improperly determined that her mental impairment does not meet or medically equal the criteria of Listing 12.04. (Id.). Therefore, the Court will

focus on whether the ALJ properly treated Dr. Huthwaite's opinion.

The ALJ noted that although Plaintiff claims she experienced bipolar disorder, she was not diagnosed on either of the psychological evaluations, and no treating physician mentioned that she had bipolar disorder. R. 22, 424-27, 498-508. Dr. Long, a consulting psychologist, evaluated Plaintiff on June 11, 2001 (R. 577-81), and on March 7, 2005 (R. 424-27). As discussed by the ALJ, in Dr. Long's 2005 evaluation of Plaintiff, he diagnosed that Plaintiff had mixed mood disorder and dysthymic disorder. R. 22. Dr. Long noted exaggeration and inconsistencies in his evaluation of Plaintiff, and concluded that one should be very careful and not over interpret clinical items. R. 23, 426. Dr. Long further noted that Plaintiff asserted that she helped her sister clean up, sometimes cooks, occasionally drives, occasionally shops, and occasionally attends church. R. 23. Plaintiff reported to Dr. Long that she avoids all people, but she lived with her sister and other family members, she goes shopping with her sister or her mother. R. 23. Dr. Long determined that the exposure to the public has not led to any difficulties with her interacting with others or caused her to withdraw from them. Additionally, Dr. Long noted that Plaintiff gets her children off to school. R. 23. Next, according to Dr. Long, Plaintiff struggled and had some difficulty in dealing with certain tasks. He noted that she appears to have been a slow learner. R. 579. Dr. Long concluded that although Plaintiff scored lower than anticipated on some of the evaluations, she is "certainly not mentally retarded." R. 581.

Dr. Huthwaite conducted a consultative examination of Plaintiff on June 26, 2007. R. 498-508. As recounted by the ALJ, Dr. Huthwaite stated Plaintiff indicated during the evaluation that she participated in special education beginning in the third grade due to being

20

a slow learner and having speech difficulties; Plaintiff reportedly never managed finances independently, although she believes she could do this. R. 505-06.

In determining the appropriate weight given to medical opinions, as previously noted, the ALJ is required to 'state with particularity the weight he gave different medical opinions and the reasons therefor.'" Sharfarz, 825 F.2d at 279. Although the ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion, Bloodsworth v. Heckler, 703 F.2d 1233, 1240 (11th Cir. 1983), failure to explain the weight given to different medical opinions is reversible error. Sharfarz, 825 F.2d at 279. Furthermore, the Commissioner's regulations require that the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) be given more weight than non-specialists. See 20 C.F.R. § 404.1527(d)(1)-(2), (5).

Here, the ALJ considered Dr. Huthwaite's opinion. R. 26. However, the ALJ concluded that Plaintiff "snookered" Dr. Huthwaite, and therefore, he discounted the opinion. Additionally, as noted supra Part III A, the ALJ noted that Plaintiff lied to Dr. Huthwaite about numerous subjects and therefore, her reporting of facts was worthless. R. 26. Therefore, the ALJ provided that he gave greater weight to Dr. Long's opinion that Plaintiff would be limited to basic labor and semi-skilled jobs. R. 27. Additionally, the ALJ clearly explained his reasons for discounting Dr. Huthwaite's opinion and giving greater weight to the opinion of Dr. Long. Thus, there was no error in the ALJ's disregarding of Dr. Huthwaite's opinion.

21

## IV. CONCLUSION

In conclusion, the Court **FINDS** that the ALJ's decision is supported by substantial evidence in the record. Accordingly, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED,** that this civil action be **CLOSED,** and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 3 1st day of July, 2009, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE